UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY ANN CHRISTIE, | : | Case No. 1:21-cv-45 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| KEURIG GREEN MOUNTAIN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER (1) DENYING MOTION FOR SUMMARY JUDGMENT; AND
(2) GRANTING LEAVE TO CONDUCT ADDITIONAL DISCOVERY**

This case is before the Court on Defendants' Motion for Summary Judgment (Doc. 13), and the parties' responsive memoranda (Docs. 15, 16).

### I. BACKGROUND

In short, Plaintiff Mary Ann Christie brings this product liability action for injuries sustained when using a coffee maker produced by Defendants Keurig Green Mountain, Inc., Keurig Dr. Pepper, Inc., and Keurig Dr. Pepper Holdings, Inc. (collectively, "Keurig"). (Doc. 2). Currently pending is Keurig's motion for summary judgment. (Doc. 13). In response to the motion, Christie argues that she has not been provided a full opportunity to engage in discovery, so the motion should be denied. (Doc. 15).

Christie initiated this action in the Hamilton County Court of Common Pleas on December 9, 2020. (Doc. 1-1). Keurig removed based on diversity jurisdiction. (Doc. 1). On April 5, 2021, Judge McFarland issued a calendar order, which provided the following deadlines: (a) Initial Disclosures – 4/18/2021; (b) Plaintiff's Experts –

6/28/2021; (c) Defendants' Experts – 8/27/2021; (d) Rebuttal Experts – 10/11/2021; (e) Discovery – 12/31/2021; and (f) Dispositive Motions – 2/25/2022. (Doc. 6).

In April 2021, Christie emailed a list of document requests to Keurig. (Doc. 14 at ¶ 5).[1] Without an introduction, definitions, or context, she requested the following:

1. ALL FEMA data related to the K10 and K15

2. UL files for K10 and K15

3. Test and Incident Reports for K10 and K15 and all other models with similar methodology of processing water to hot coffee

4. Variation Inspector Notices for K15

5. All information about K10 and its recall including information on design changes that were included in the replacement model K15

6. Drawings and spec sheets for K10 and K15

7. Date codes and Identification codes for K10 and K15 units

8. What did K10 repair kit include and how was it supposed to reduce risk to consumer of burns or other injury

9. 1082 UR Standards data related to K10 and K15

10. All root cause analysis for all models that experienced hot water escaping from the unit other than into a cup placed below K-Pod

---

[1] Christie states that Keurig should have produced documents responsive to all these requests as part of their initial disclosures. Without awaiting a discovery request, a party must disclose to the other parties "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Given the breadth of the information requested, the Court cannot say that *all* these documents were required in initial disclosures. However, as mentioned *infra*, Keurig's initial disclosure were late.

    11.     Variation Notices from inspectors

    12.     Any reports of problems concerning Blue Mountain coffee Pods not working properly win Keurig coffee makers

    13.     All communication to or from Blue Mountain

    14.     All data elated to meeting 1082 UR Standards for K10 and K15

    15.     All data related to testing the K10 and K15

    16.     Any steps taken to mitigate the risk of hot water escaping the unit other than as designed for K10 and K15.

(*Id.*; Doc. 18-1). After receiving no response from Keurig, Christie followed-up on June 4, 2021. (Doc. 14 at ¶ 11).

In late June 2021, the parties jointly moved for, and Judge McFarland granted, an extension of expert deadlines. (Doc. 7; 6/25/2021 Notation Order). On August 27, 2021, nearing the new expert deadlines, Christie filed a notice, informing the Court that her expert was unable to complete their report because she was still waiting on discovery responses and documents from Keurig. (Doc. 9). Christie did not move to extend any deadlines or move to compel discovery.

On September 13, 2021, Keurig untimely sent its initial disclosures to Christie. (Doc. 14 at ¶ 17; Doc. 18 at ¶ 5). It is unclear what, if any, documents Keurig sent, Christie received, or Christie could access at that time. Keurig also responded to Christie's emailed discovery requests, asserting objections, including many for vagueness, to all her requests. (Doc. 18-3). In response, Christie did not provide any additional context for her requests, instead asserting that Keurig "knows what each of the

3

short list of requests are and they need to produce it." (Doc. 18 at ¶ 7; Doc. 18-4).[2] However, on October 11, 2021, Christie followed-up with Keurig, providing more detailed descriptions of her requests. (Doc. 18 at ¶ 8; Doc. 18-5).

Keurig responded, asking for a protective order, to which Christie agreed. (Doc. 18 at ¶¶ 10-11; Doc. 18-5). On October 25 and 27, 2021, Christie sent follow-up emails to Keurig, still requesting documents and signing a protective order.[3] (Doc. 18 at ¶¶ 12, 13). On December 8, 2021, Christie filed another notice with the Court, again stating that her expert was unable to complete their report because she was waiting on responsive documents from Keurig. (Doc. 11). Christie did not move to extend any deadlines or move to compel discovery.

Christie sent another follow-up to Keurig on December 14, 2021. (Doc. 18 at ¶ 15). Thirteen days later, Keurig responded, stating: "We have responded to your document requests with our formal responses/objections. You should have received a prior link to documents. I will have it re-sent if you did not." (Doc. 18 at ¶ 16). On January 7, 2022, Christie notified Keurig that she had yet to receive any documents or a link to any documents. (Doc. 18 at ¶ 17). Keurig provided the link the same day. (Doc. 18 at ¶ 18). The link included about 500 pages of documents. (Doc. 14 at ¶ 22).

---

[2] It appears that, on September 24, 2021, Christie's counsel reached out via email to Judge McFarland's Chambers. (Doc. 14 at ¶ 16). Christie, however, provides no explanation of what she sent or whether anything occurred from that interaction.

[3] Keurig never filed a motion for a protective order.

4

According to Christie, her expert was still missing key documents, specifically those related to "product incidents or product failure claims." (Doc. 18 at ¶ 19).

On January 12, 2022, <u>after</u> the December 31, 2021 discovery deadline, Keurig took Christie's deposition. (Doc. 14 at ¶ 6; Doc. 18 at ¶ 19). Christie's counsel, Joseph Shea, informed Keurig's counsel that he was still missing documents responsive to plaintiff's requests, to which Keurig's counsel responded: "I've tried to assemble what I can. I'll go back to them, obviously." (Doc. 14 at ¶ 6; Doc. 18 at ¶ 19).

No additional documents were produced. Instead, Keurig moved for summary judgment. (Doc. 13). Christie opposed the motion, including an affidavit from Attorney Shea, which discussed Christie's inability to obtain discovery from Keurig. (Docs. 14, 15). About two months after her response, Christie requested oral argument or a status conference with the Court. (Doc. 17). Christie also submitted a second affidavit from Attorney Shea, purporting to provide the Court with more background on the discovery dispute between the parties. (Doc. 18).

On August 4, 2022, the case was reassigned to the undersigned. (Doc. 20). The motion for summary judgment, including the discovery dispute, remain pending.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(d) provides:

> (d) If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) Defer considering the motion or deny it;

5

>> (2) Allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) Issue any other appropriate order.

"The purpose behind Rule 56(d) is to ensure that plaintiffs receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment.'" *Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019) (quoting *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004)). "A party invoking the protections of Rule 56(d) must do so in good faith by affirmatively demonstrating how postponement of a ruling on the motion will enable [her] to rebut the movant's showing of the absence of a genuine issue of fact." *Id.* (cleaned up). "Beyond the procedural requirement of filing an affidavit, [Rule 56(d)] has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000).

Additionally, "'[t]he party opposing a motion for summary judgment…possesses no absolute right to additional time for discovery under Rule 56.'" *City of Memphis*, 928 F.3d at 490 (quoting *Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989)) (alteration in original). For example, a district court does not abuse its discretion if it denies irrelevant discovery or if the discovery sought is overly broad or unduly burdensome. *See id.* However, the Sixth Circuit has recognized that, "[a]lthough our standard of review is abuse of discretion, this Court has cited approvingly other circuits' view that a motion requesting time for additional discovery should be granted almost as a

6

matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Id.* (cleaned up).

Stated further, an appellate court reviewing a district court's ruling on a motion for further discovery pursuant to Rule 56(d) considers the following "*Plott* factors:"

> (1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests.

*Id.* at 491 (citing *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008)); *see also Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995)).

### III. ANALYSIS

#### A. Remand

As an initial matter, the Court addresses Christie's argument that this action should be remanded. Keurig removed based on diversity jurisdiction. (Doc. 1). In her Complaint, Christie pled that her damages included a knee replacement. (Doc. 2 at ¶ 13). Christie now asserts that her knee replacement was not caused by Keurig's conduct, so her damages no longer meet the $75,000 amount-in-controversy requirement.[4]

"The existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal." *Harper v. AutoAlliance Int'l, Inc.*, 392

---

[4] In a May 2021 status report to Judge McFarland, Christie suggested that the main issue before the Court was her request to remand to state court, believing she could receive a faster resolution in that forum. (Doc. 23-1). Keurig suggests that this shows that Christie is no longer challenging inadequate discovery. (*Id.*) Based on the filings, Christie may have prioritized remand, but she still maintained her issues with discovery.

F.3d 195, 210 (6th Cir. 2004) (citation omitted); *see also Northup Properties, Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 769–70 (6th Cir. 2009). Although Christie may not be able to prove $75,000 in damages at the end of the day, the well-pleaded allegations at the time of removal satisfied the amount-in-controversy requirement, and the Court maintains subject matter jurisdiction over the action.[5]

### B. Discovery

Christie argues that Keurig's motion for summary judgment should be denied pursuant to Rule 56(d) because Keurig has "withheld all of the evidence sought in formal discovery." (Doc. 15 at 1). Keurig contends that its 500-page document production was sufficient and that any remaining discovery is non-existent, subject to privilege, irrelevant, or beyond the scope of discovery. (Doc. 16 at 4). Keurig also takes issue with Christie's failure to notice any depositions before the close of discovery and Christie not moving to compel any discovery. (*Id.*)

Turning to Rule 56(d), Christie complied with the procedural requirement of filing an affidavit via Attorney Shea. (Docs. 14, 18). The affidavits describe Christie's need for additional discovery, what material facts she hopes to uncover, and why the discovery was not produced before.

---

[5] To the extent Christie is now attempting to stipulate to damages less than the jurisdictional threshold, any stipulation is not unequivocal nor does it appear to be her first clarification on damages. *See Total Quality Logistics, LLC v. Reed Transp. Servs., Inc.*, No. 1:19-CV-182, 2019 WL 6723837, at *2 (S.D. Ohio Dec. 11, 2019) (discussing law on post-removal stipulations clarifying the amount in controversy).

Taking the first two items together, Christie has not received what she believes are "key items," including: (i) information related to how Keuriug "remediated" its K10 model, which was known to cause injuries, into the K15 model, which caused Christie's injuries; and (ii) any documents listing injuries caused by an "explosion" of the K15 model. (Doc. 14 at ¶ 22). According to Christie, these documents would show Keurig's knowledge that the K15 model was defective and could cause injuries, and may rebut Keurig's motion for summary judgment.

Christie has also indicated why she has not received this information sooner. To be sure, Christie never filed a motion to compel or to extend the case deadlines. But, Christie put the Court on notice of Keurig's failure to respond to her discovery requests. (Docs. 9, 10). Christie also actively tried to receive documents from Keurig, continuously following-up and demanding documents.

More telling, Keurig abused its discovery obligations. Keurig's initial disclosures were five months late. Keurig also took five months to respond to Christie's discovery requests, which response included mostly objections. It took another three months for Keurig to produce any documents, which documents Christie did not receive until after the discovery deadline. Keurig took Christie's deposition after the discovery deadline. Moreover, Keurig's counsel seemingly admitted at that deposition that Keurig might not have fully responded to discovery when counsel indicated he would go back to the well to be sure Keurig produced all responsive documents. Thus, Christie has complied with the procedural and substantive requirements of Rule 56(d).

9

Additionally, the *Plott* factors weigh in favor of affording Christie the opportunity to conduct additional discovery. *See City of Memphis*, 928 F.3d at 490. Although Christie has known of the subject discovery since the onset of the litigation, the documents she seeks could possibly impact a summary judgment ruling. The discovery period lasted about seven months, which may be enough in some cases, but not here, given Keurig's delay. Finally, Christie was not dilatory in her discovery efforts. She diligently sought information from Keurig; and Keurig was the unresponsive party.

Accordingly, considering the foregoing, the Court, in its discretion and noting that requests for additional discovery should be granted almost as a matter of course, denies Keurig's motion for summary judgment. The Court further grants Christie leave to conduct additional discovery as detailed below.

### IV.   CONCLUSION

Based upon the foregoing:

1. Defendants' Motion for Summary Judgment (Doc. 13) is **DENIED**.

2. So as to timely complete additional discovery:

    a. **Within seven (7) days** of this Order, Plaintiff shall identify for Defendants the specific requests (Docs. 18-1, 18-4) for which she contends she has not received responsive information.

    b. Defendants shall respond **within twenty-one (21) days** thereafter, including:

        i. Supplementing Defendants' written discovery responses;

        ii. Producing responsive documents not already in Plaintiff's possession;

      iii.      Identifying specific documents to the extent Defendants contend they have already produced documents responsive to a request; and

      iv.      Providing a privilege log, to the extent Defendants claim privilege.

3.      **Within seven (7) days** of this Order, the parties shall jointly submit a new proposed calendar order with dates for experts, settlement exchanges, dispositive motions, final pretrial conference, and trial.

**IT IS SO ORDERED.**

Date:    9/13/2022                                                        *s/Timothy S. Black*
                                                                                         Timothy S. Black
                                                                                         United States District Judge